# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
) Case No. 1:22mj129
All funds on deposit in Truliant Federal Credit Union savings account )
number 40004408833 in the names of Gregory M. Evans Sr. and )
Makeithra P. Evans )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER
## RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Middle___ District of ___North Carolina___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981(a)(1)(C)___ *(describe the property)*:

All funds on deposit in Truliant Federal Credit Union savings account number 40004408833 in the names of Gregory M. Evans Sr. and Makeithra P. Evans

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Carter N. Catlett, III
*Applicant's signature*

Carter N. Catlett, III, Special Agent, SBA, OIG
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable electronic means, on this ___17th___ day of March, 2022, at ___0:07___ a.m./p.m.

*i.e. telephone after e-mailing documents*

Date: 03/17/22

City and state: Greensboro, NC

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEIZURE WARRANTS

I, Carter N. Catlett III, Special Agent with the United States Small Business Administration -- Office of Inspector General (SBA-OIG) state under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct.

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigation of and to make arrests for offenses enumerated in Section 2516 of Title 18. I have been employed as a Special Agent with SBA-OIG since 2021. Prior to that, I was employed as a Special Agent with the United States Department of the Treasury – Office of Inspector General (TIG) since 2014. I am currently assigned to the SBA-OIG Eastern Regional Office (ERO) and as part of my duties I investigate crimes against the SBA, its departments, programs and entities. My duties include the investigation of illegal activities, including but not limited to scams in which people fraudulently obtain SBA guaranteed funds by submitting false documents to the SBA and it authorized lenders. Prior to TIG, I was employed by the United States Secret Service as a Special Agent from 2004 through 2014. As a Special Agent, I have conducted or participated in investigations of numerous fraud schemes. I have also participated in the execution of search and seizure warrants in the capacity of affiant and participant.

2. This Affidavit is made in support of applications for seizure warrants for the

following:

      a. All funds on deposit up to a total of $59,900 in Truliant Federal Credit Union checking account number 400043408841 in the names of Gregory M. Evans Sr. and Makeithra P. Evans; and

      b. All funds on deposit in Truliant Federal Credit Union savings account number 40004408833 in the names of Gregory M. Evans Sr. and Makeithra P. Evans.

3. This investigation concerns Gregory Marcel Evans (EVANS) of Creedmoor, North Carolina. This investigation has revealed that during the summer of 2020, EVANS engaged in a scheme to facilitate the unauthorized use of United States Government funds, including funds received from the Economic Injury Disaster Loan program (EIDL),[1] for personal gain.

4. Based on the investigation described below, there is probable cause to believe that the bank accounts listed in paragraph 2 constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of Title 18, United States Code, Sections 1343 (wire fraud), and/or 641 (theft of government funds), and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

5. The facts and information contained in this Affidavit are based on my personal knowledge, as well as information obtained from witness interviews, documents, law enforcement records, and interviews and reports from other sworn law enforcement

---

[1] Described in more detail below, the Economic Injury Disaster Loan program was part of the federal government response to assist small businesses during the COVID-19 pandemic.

officers.

6. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

## THE CARES ACT AND THE RESPONSE TO THE COVID-19 PANDEMIC

7. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8. As part of that effort, the SBA enables and provides loans through banks, credit unions, and other lenders that have government-backed guarantees. The SBA also provides direct loans.

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 and was designed to provide emergency financial assistance to the millions of Americans suffering negative economic effects caused by the COVID-19 pandemic.

10. The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

11. The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

12. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA. The business entity must have existed in an operational condition as of February 1, 2020. The application process involves filling out assorted data fields relating to the size of the affected business entity, the ownership of the business, and other information such as the number of employees, gross business revenues, and cost of goods sold in the 12 months prior to the declared disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.

13. In conjunction with the submission of an EIDL application, by simply clicking on and checking a box within the on-line application, an applicant could request and then receive up to $10,000.00 in an EIDL Cash Advance Grant based on the number of employees claimed. EIDL Cash Advance Grants need not be repaid to the SBA if the

loan application is ultimately denied by the SBA, or if the applicant declines the EIDL that may be offered by the SBA at a later date.

14. The EIDL applicant was not required to provide supporting documentation but was required to certify under penalty of perjury that all of the information in the application was true and correct to the best of the applicant's knowledge.

15. EIDL applications were submitted directly to the SBA through an online portal and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods sold, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA.

16. Pursuant to the provisions governing the EIDL program, borrowers are required to use loan proceeds on certain permissible expenses. Specifically, the EIDL funding can be used by the business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

17. The SBA Office of Disaster Assistance (ODA) controls the EIDL program and is headquartered at 409 3rd Street SW, Washington, DC 20416. The ODA has authority over all loans created and disbursed under the EIDL program. Economic Injury Disaster Loan principal proceeds and available Cash Advance Grants (up to $10,000) are solely funded by the SBA and are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

## INVESTIGATION

18. On February 15, 2022, the SBA-OIG received a complaint from the Inspector General for Tax Administration (TIGTA) and Truliant Federal Credit Union (TFCU) regarding a wire fraud scheme involving EVANS. The complainant stated that EVANS applied for and received an EIDL Loan by submitting fraudulent documentation to the SBA to qualify for a $10,000 grant as well as a $150,000 loan.

19. SBA-OIG confirmed that EVANS applied for an EIDL loan and Cash Advance Grant (application #3307061916) from the SBA on June 28, 2020. Information provided by EVANS to the SBA via the EIDL Portal stated he was the sole proprietor of G Evans Fam Commercial Cleaning with a Federal Tax Identification Number of 01-0703833. EVANS application stated the business was opened on December 28, 2002, employed fourteen (14) people, and had gross revenues of $781,559 in the year 2019.

20. EVANS' request for an EIDL Cash Advance Grant was initially declined, but on June 29, 2020, after EVANS requested "Advance Reconsideration", the grant was approved in the amount of $10,000, the maximum allowed under the EIDL guidelines.

21. On June 30, 2020, the SBA disbursed $10,000 in EIDL Grant funds via wire transfer payable to "G Evans Family Commeri" into EVANS' personal checking account at TFCU a #400043408841.

22. On July 3, 2020, the SBA approved EVANS's application for a $150,000 loan (loan number #8214028009) and the SBA disbursed $149,900 ($150,000 minus $100 administration fee) in EIDL funds via wire transfer payable to "G Evans Family Commeri" into EVANS' personal checking account at TFCU #400043408841.

23. On July 7, 2020, $100,000 was transferred from EVANS' personal checking account at TFCU #400043408841 to EVANS' savings account at TFCU #4004408833. At the time of the transfer EVANS' savings account had a balance of $6.98. Based on my review of TFCU statements for the account through January 31, 2022, the only activity in the account since the $100,000 transfer are monthly interest accruals in amounts ranging from $7.68 to $12.71.

24. On information and belief, EVANS suffered debilitating injuries in 2020 after receipt of the EIDL funds. In November 2020, Makeithra P. Evans was appointed General Guardian of the estate of Gregory Marcel EVANS Sr. In September 2021, Makeithra Evans was added as a joint owner of EVANS' TFCU accounts.

25. On February 16, 2022, a check of the North Carolina Employment Security Commission records showed no 2019 or 2020 wages for EVANS under his SSN X2071, and no record of payroll for any employees of G Evans Fam Commercial Cleaning under Employer Identification Number (EIN) 01-0703833 for 2019 or 2020.

26. TFCU has banked EVANS since at least October 2015 and has no record of open or closed accounts in the name of G Evans Family Commercial Cleaning. In addition, there is no identifiable business-related activity in EVANS' accounts #400043408841 or #4004408833 from January 2019 to present.

27. A public database search revealed no online presence for G Evans Fam Commercial Cleaning in North Carolina.

## CONCLUSION

28. Based on the investigation described above, I submit there is probable cause

to believe that the properties listed in paragraph 2 constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of Title 18, United States Code, Sections 1343 (wire fraud), and/or 641 (theft of government funds), and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

This the 17th day of March, 2022.

/s/ Carter N. Catlett III
Carter N. Catlett III
Special Agent
Small Business Administration
Office of the Inspector General

On this day, the applicant appeared before me by reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1. This the 17 day of March, 2022 at 2:01 p.m.

Hon. L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina